IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| RUPERT B.,<br><br>                    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | CV 21–76–M–DWM<br><br><br>OPINION &<br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of

Social Security denying his application for Disability Insurance Benefits under

Title II of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The

Commissioner's denial of benefits is reversed and remanded to the agency on

narrow grounds consistent with this opinion.

### LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of Social Security benefits if the Administrative Law Judge's ("ALJ")

findings are based on legal error or not supported by substantial evidence in the

record.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  "Substantial

evidence means more than a mere scintilla, but less than a preponderance."  *Id.*

1

(internal quotation marks omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).  "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998).  Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving disability exists.  42 U.S.C. § 423(d)(5).  Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled only if his impairments are so severe that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other

substantial gainful activity in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation

process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v).  The process

begins, at the first and second steps, "by asking whether a claimant is engaged in

'substantial gainful activity' and considering the severity of the claimant's

impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  "If the

inquiry continues beyond the second step, the third step asks whether the

claimant's impairment or combination of impairments meets or equals a listing

under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.*

"If the process continues beyond the third step, the fourth and fifth steps consider

the claimant's 'residual functioning capacity' in determining whether the claimant

can still do past relevant work or make an adjustment to other work." *Id.*  At step

five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098.  "If a

claimant is found to be 'disabled' or 'not disabled' at any step in the sequence,

there is no need to consider subsequent steps." *Id.*

## BACKGROUND

Plaintiff began his quest for Social Security benefits in February 2011, and

since that time his case has twice been remanded from this Court, and most

recently been remanded from the Appeals Council.  On February 14, 2011,

3

Plaintiff filed his application for a period of disability and disability insurance

benefits under Title II of the Social Security Act, alleging disability beginning on

October 22, 2009.  AR 20.  An ALJ denied the claim on May 17, 2011, and upon

reconsideration on October 26, 2011.  AR 20.  After filing a written request for

hearing, Plaintiff appeared at a hearing on May 16, 2012.  *See* AR 40–137.  The

ALJ subsequently denied Plaintiff's claim in June 2012.  AR 20–34.  In 2014, this

Court remanded Plaintiff's case, *see* AR 1437, and in 2017 this Court again

remanded Plaintiffs' case based on the stipulation of the parties, *see Plaintiff v.*

*Berryhill*, 9:16-cv-90-M-DLC-JCL (Doc. 18).  The 2017 order identified four

items for the ALJ to consider on remand:

> (1) consider, evaluate, and assign appropriate weight to the medical
> opinions of record, including but not limited to the opinions of Drs.
> Vanichkachorn and Butcher; (2) consider, evaluate, and assign
> appropriate weight to Ms. Norton's "other medical source" opinion; (3)
> reevaluate the lay witness testimony from Mr. Cattlerin, and [Plaintiff's
> wife]; and (4) assess Plaintiff's symptom testimony under SSR 16-3p.
> If applicable, the ALJ should weigh any additional limitations the
> claimant alleged in the May 2015 hearing and supplement the record to
> include the transcript from the May 2015 hearing, if possible.

(*Id.*)

ALJ Michele Kelly held a hearing on January 22, 2021, at which Plaintiff

was represented by counsel.  AR 1484–525.  On March 10, 2021, the ALJ denied

Plaintiff's claims, finding Plaintiff failed to show he was disabled since he last met

the insured status requirements.  AR 1437–68.  At step one, the ALJ found Plaintiff

4

last met the insured status requirements of the Social Security Act on December 31, 2014. AR 1440. She found Plaintiff had not engaged in substantial gainful activity since October 22, 2009 (the alleged onset date of his alleged disability) through his date last insured. AR 1440. At step two, the ALJ found Plaintiff had the following severe impairments: "right rotator cuff tear, status post repair with biceps tenodesis; thoracic and lumbar degenerative disc disease; right cruciate ligament tear, status post reconstruction, partial medial and lateral meniscectomies, and chondroplasty; obesity; emphysema; bilateral hearing loss; and bilateral carpal tunnel syndrome." AR 1440. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 1445.

At step four, the ALJ determined that, through the date last insured, Plaintiff had a residual functioning capacity ("RFC") to perform as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 494.1567(b) with some exceptions. Specifically, the claimant was able to lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally with the upper extremities bilaterally, was able to lift no greater than 10 pounds overhead with the upper extremities bilaterally, occasionally able to push and/or pull with the right upper extremity, occasionally able to reach over shoulder level with the upper extremities bilaterally, and frequently reach laterally with the right upper extremity (no limitations with regard to reaching to the front with either upper extremity or laterally with the left upper extremity). The claimant was frequently able to perform fine and gross manipulation bilaterally. The claimant was able to stand and/or walk about six hours in an eight-hour workday (with normal breaks), and sit for about six hours in an eight-hour

5

workday (with normal breaks; normal breaks being defined as occurring every two hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes). The claimant needed to avoid concentrated exposure to extreme cold, to vibration, to hazards such as unprotected heights and dangerous machinery, and avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. The claimant was able to tolerate moderate noise levels (e.g. no exposure to noise of greater than 4/5 or 5/5 as defined in the DOT and SCO). The claimant was able to understand, remember, and carry out simple, detailed, and complex tasks, was able to maintain attention, concentration, persistence, and pace for such tasks for eight-hour workdays and 40-hour work weeks, was able to tolerate interaction with supervisors, coworkers, and members of the public, was able to tolerate usual work situations, and was able to tolerate changes in routine work settings.

AR 1448–49. The ALJ concluded that through the date last insured, Plaintiff was unable to perform any past relevant work. AR 1466. But relying on the testimony from the vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded at step five that, through the date last insured, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," including cashier II, sales attendant, and cafeteria attendant. AR 1466–67. Consequently, the ALJ concluded that Plaintiff was not disabled through the date of last insured. AR 1468.

Plaintiff appealed the ALJ's 2021 decision to this Court on June 24, 2021. (Doc. 1.) The Commissioner filed the certified administrative record on September

10, 2021.  (*See* Doc. 6.)  This matter was fully briefed as of December 30, 2021.

(Docs. 10, 11, 12.)

## Analysis

As a preliminary matter, Plaintiff argues that the Court should refuse to

consider any arguments "beyond the 3,999th word" in the Commissioner's brief

due to Local Rule violations.  (Doc. 12 at 2.)  While Plaintiff correctly notes that

Local Rule 7.1(d)(2)(C) requires a table of contents and table of authorities for

briefs beyond 4,000 words, the Local Rules clarify that social security cases

proceed under Local Rule 78.2.  *See* D. Mont L.R. 3.1(c).  Local Rule 78.2(a) sets

a special briefing schedule, and Local Rule 78.2(b) sets forth the requirements for

principal briefs in social security cases.  No tables are required, and principal briefs

shall contain "no more than 6250 words."  L.R. 78.2(b)(5).  According to the

Commissioner's certificate of compliance, the response brief contains 6,091 words.

(Doc. 11 at 32.)  However, excluding the caption, certificates, and signature

blocks, it appears the Commissioner's brief exceeds the 6250 word-limit by

roughly 400 words.  (*Cf.* Doc. 12 at 2.)  Assuming *arguendo* that Plaintiff's

proposed remedy of excluding any excess words from consideration is apropos,

only the last two pages of the Commissioner's brief would be excluded.  The

substance of the Commissioner's arguments are therefore considered in their

entirety.

On the merits, Plaintiff argues that the ALJ erred in five ways: (1) the ALJ found several of Plaintiff's impairments were not severe at step two; (2) the ALJ found Plaintiff not credible; (3) the ALJ rejected medical opinions; (4) the ALJ rejected lay testimony; and (5) the ALJ's authority was unconstitutional at the time of the decision.  Plaintiff's constitutional argument is unpersuasive.  Additionally, the ALJ's findings at step two are supported by substantial evidence, as are her findings on nearly all of the medical opinions Plaintiff challenges.  However, the ALJ's decision to discredit the findings of Rebecca Norton, OTH and CHS, is not supported by substantial evidence.  Likewise, to the extent the ALJ rejected the lay testimony based on the conclusion that it was contradicted by the medical record as it related to Plaintiff's carpal and metacarpal capabilities, that decision was in error.  Because these decisions were consequential in the ultimate determination on disability, the error was not harmless and remand is necessary.

## I.    Constitutional Argument

Plaintiff alleges that the ALJ lacked the authority to deny his claim because her authority derived from the allegedly constitutionally deficient appointment[1] of the Social Security Commissioner.  (Doc. 10 at 18.)  This argument is rooted in the separation of powers doctrine; specifically, Plaintiff alleges a violation of "[t]he

---

[1] Although Plaintiff labels his challenge as one directed at the Commissioner's "appointment," the Commissioner's brief in response and Plaintiff's reply brief clarify that Plaintiff takes issue with the Commissioner's removal.

President's power to remove—and thus supervise—those who wield executive power on his behalf," which "flows from the text of Article II." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191–92 (2020). The President's removal power is nearly unfettered. *Id.* at 2192. Plaintiff's argument is that the Commissioner of Social Security is appointed by a statute, 42 U.S.C. § 902, that unconstitutionally circumscribes the President's removal power, and because the ALJ is an inferior officer of the Commissioner, the ALJ was improperly exercising her power by extension. While creative, Plaintiff's argument lacks merit here.

The Ninth Circuit recently resolved the question of whether § 902(a)(3) violates the separation of powers principle in the affirmative. *Kaufmann v. Kijakazi*, __ F.4th __, 2022 WL 1233238, *4 (9th Cir. Apr. 27, 2022) ("The removal provision violates separation of powers principles."). However, that conclusion does not, standing alone, warrant vacatur of the ALJ's decision because not all actions undertaken by the Commissioner are void notwithstanding an unconstitutional removal position. *Collins v. Yellen*, S. Ct. 1761, 1788 n.23 (2021) ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."). Rather, despite Plaintiff's argument to the contrary, (Doc. 12 at 5–6), the Ninth Circuit recognized that the removal provision is severable from the rest of the statute and any claimant requesting relief pursuant to the unconstitutional

9

removal provision must "show how the unconstitutional removal provision *actually harmed* the party." *Kaufmann*, 2022 WL 1233238, at *5; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (recognizing that a claimant must demonstrate a causal link between the claimant's alleged injury and the unlawful removal provision).

*Decker Coal* is instructive. The claimant in *Decker Coal* sought benefits under the Black Lung Benefits Act and pursued his claim through the Benefits Review Board of the Department of Labor. 8 F.4th at 1126. Although an ALJ awarded the claimant some benefits, the claimant ultimately appealed the ALJ's decision to the Ninth Circuit based, in part, on the argument that the statute governing the removal of ALJ was constitutionally defective because of an invalid removal provision. *Id.* On review, the court explained that a new hearing is the appropriate remedy only when an ALJ's adjudication is "tainted with an appointments violation." *Id.* at 1136–37 (quoting *Luica v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018)) (emphasis omitted). The court also emphasized that "*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions" and the key to invalidating agency action under *Collins* "is demonstrating that the unconstitutional provision actually caused the plaintiff harm." *Id.* at 1136. Because the record in *Decker Coal* did not include any evidence that the ALJ took unlawful action, the Ninth Circuit rejected the

10

claimant's argument that the unconstitutional removal provision required invalidating the ALJ's decision. *Id.  Kaufmann* affirmed *Decker Coal*'s reasoning. *See Kaufmann*, 2022 WL 1233238, at *4–5.

Like the ALJ in *Decker Coal*, "the ALJ here was performing a purely adjudicatory function" in deciding Plaintiff's Social Security claim.  8 F.4th at 1133.  Accordingly, Plaintiff's argument fails for the same reasons.  First, Plaintiff is not alleging an appointments violation, so a new hearing before the ALJ is not required.  (*See* Doc. 10 at 18); *compare with Decker Coal*, 8 F.4th at 1136–37 *and Kaufman*, 2022 WL 1233238, at *5.  Rather, Plaintiff alleges that "[a]t the time [the ALJ] issued her March 2021 decision, the ALJ derived her authority from Commissioner Saul[,] whose appointment was unconstitutional."  (Doc. 10 at 18.) And, like the *Kaufmann* claimant, Plaintiff "has presented neither evidence nor a plausible theory to show that the removal provision caused [him] any harm."  2022 WL 1233238, at *5.  While Plaintiff argues that "[i]t is possible that the denials of disability claims [from 2019 to 2021] resulted from the reduced due process at [] benefits appeals hearings or that the ALJ decisions were made inaccurately under the pressure of politicized disability benefits" as a result of then-Commissioner Saul, (Doc. 12 at 5), Plaintiff's argument is speculative and there is no evidence in this record to suggest that his alleged injury arose from the removal provision

affecting Commissioner Saul. Plaintiff fails to establish the requisite link between his injury and the statutory removal provision, and this argument accordingly fails.

## II.     Step 2 Severity Findings

A severe impairment is any medically determined physical or mental impairment that lasts or is expected to last for a period of at least twelve months, 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, and that "significantly limits [a claimant's] physical or mental ability to do basic work activities," *id.* §§ 404.1520(c), 404.1522(a). Although the severity requirement is considered a "de minimis screening device used to dispose of groundless claims," *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quotation marks and alteration omitted), "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 404.1521.

Plaintiff argues that the ALJ erred by finding that Plaintiff's "cavovarus deformities, right ankle instability and impingement impairments" were nonsevere at step two of the sequential analysis. (Doc. 10 at 3.) According to Plaintiff, the ALJ applied an improper standard in making her nonsevere finding because she "assessed whether there was a dearth of evidence" rather than consider whether the alleged impairments "had more than a minimal impact on work-related functionality," and any "dearth" of evidence in this case arose from Plaintiff's inability to pay for the medical care that would have substantiated his claims of

12

severity. (*Id.* at 3–4.) While Plaintiff is correct that an ALJ cannot deny disability benefits "because of the claimant's failure to obtain treatment he cannot obtain for lack of funds," *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quotation marks omitted), the record does not indicate such conduct occurred here.

As a threshold matter, the statement from *Orn* on which Plaintiff relies was made in the context of assessing the claimant's credibility, not in the context of determining the severity of the claimant's alleged impairments. Specifically, the court explained that a claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding." *Id.* This distinction is important because the severity of an impairment at the step two inquiry "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Thus, the ALJ properly assessed whether medical evidence in the relevant timeframe established Plaintiff's claimed severities, and in doing so noted the lack of such evidence. *See* AR 1444. The ALJ noted that one medical report from Dr. Magill in 2020 supported Plaintiff's current complaints related to his feet, but she explained that single report did not actually include any objective evidence from which the ALJ could corroborate Plaintiff's complaints. *See* AR 1444. Additionally, as the Commissioner notes, Plaintiff sought and received medical treatment for other conditions during the time he now claims he could not obtain treatment for the

13

alleged impairments at issue. (*See* Doc. 11 at 20 (citing AR 1314–410).) That Plaintiff has medical records unrelated to the impairments at issue while he simultaneously claims he could not obtain medical treatment for other impairments is substantial evidence that supports the ALJ's findings at step two.

### III.   Plaintiff's Credibility

The Ninth Circuit has established a two-part test for determining the extent a claimant's symptom testimony is credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first step, the claimant must present objective medical evidence of an underlying impairment that could reasonably have caused some degree of the alleged symptom. *Id.* If the ALJ determines that a claimant is not malingering and has satisfied the first step, at the second step "the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security Cases." *Id.* In evaluating the claimant's testimony, the ALJ may apply "ordinary techniques of credibility evaluation," which includes consideration of inconsistencies between the claimant's testimony and conduct, the claimant's unexplained failure to comply with prescribed treatments, and whether the claimant's daily activities are inconsistent with the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotations omitted) *superseded on*

14

*other grounds by* 20 C.F.R. § 404.1502(a)). Additionally, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

Here, the ALJ concluded Plaintiff satisfied the first step as he was not malingering and his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 1452. However, the ALJ rejected Plaintiff's testimony about the severity of his symptoms because his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 1452. Plaintiff challenges the ALJ's findings concerning his testimony on his alleged mental limitations and his testimony concerning his fluctuating pain levels. (Doc. 10 at 5–6.) He also alleges that the ALJ improperly relied on "gaps" in his treatment record to reject his testimony, and the ALJ impermissibly generalized to justify her rejection of Plaintiff's symptom testimony rather than making the requisite link between Plaintiff's symptoms and the record. (*Id.*) Ultimately, the record supports the ALJ's determinations on Plaintiff's credibility.

### A. Mental Limitations

According to Plaintiff, the ALJ erred in relying on Plaintiff's testimony that he was able to "prepare small meals, shop in stores, pay bills, count change, handle

a savings account, and use a checkbook" to reject his testimony on his alleged

mental limitations because she did not assess whether those activities were a

"substantial" part of Plaintiff's day and whether those activities had workplace

transferability.  (Doc. 10 at 5 (quoting AR 1450).)  This argument is a red herring.

The ALJ concluded, at step two, that Plaintiff's mental limitations were not

"severe" based on the medical evidence in the record that indicates mild to

moderate mental impairment.  AR 1443 (citing non-treating providers who

reviewed Plaintiff's medical records).  The ALJ then accounted for some mild to

moderate impairment in the RFC, *see* AR 1446, consistent with the duty to do so

under the Regulations, *see* 20 C.F.R. § 404.1545(a)(2).  Plaintiff fails to make a

coherent argument as to how the ALJ's incorporation of mild and moderate mental

impairments was an erroneous basis for rejecting Plaintiff's symptom testimony.

This argument fails.

### B. Severity of Pain

Plaintiff's most significant credibility argument is that the ALJ improperly

rejected Plaintiff's testimony about the severity of his pain by misconstruing

medical records and considering inapposite activities.  The Commissioner responds

that the ALJ provided "specific, clear, and convincing reasons," which included

review of relevant medical records and consideration of relevant activities.  (Doc.

11 at 19 (quoting *Molina*, 674 F.3d at 1112).)  The Commissioner has the better

16

argument.  The ALJ identified the following excerpts in the record that she

believed were inconsistent with Plaintiff's reports of the severity of his pain: the

report from Dr. Albert D. Olszewski that determined Plaintiff's "symptoms of pain

were out of proportion to his current knee status"; Plaintiff's ongoing use of his

motorcycle during periods of allegedly severe pain; and x-ray and MRI findings

that indicated only mild or moderate impairments related to Plaintiff's back.  AR

1453–55.

     First, Plaintiff argues that "the wholesale rejection of credibility cannot be

premised on the rejection of testimony about a particular body part" in relation to

his right knee injury.  (Doc. 10 at 8.)  But the ALJ's decision does not indicate that

she found Plaintiff entirely not credible; rather, the ALJ recounted previous

testimony and medical evidence Plaintiff had provided related to his knee pain, and

ultimately concluded that those previous statements remained inconsistent with the

severity of the pain Plaintiff continued to allege.  AR 1452.  Plaintiff injured his

right knee in August 2011—tearing his anterior cruciate ligament in his right

knee—and underwent surgery for the tear in November 2011.  *See, e.g.*, AR 1599,

1715.  The ALJ noted that, in September 2011, Dr. Olszewski informed Plaintiff

"that his symptoms of pain were out of proportion to his current knee status."  AR

1453 (citing AR 481).  At Plaintiff's 2012 hearing before an ALJ, he stated that no

limitations had been placed on him due to his right knee, and he "ha[d] never

17

claimed limitations on [his] right knee." AR 1749. At the 2021 hearing, Plaintiff

testified to his need to lay down to take the weight off his lower body, including

his knees, AR 1498, but that was the extent of his testimony regarding his knee.

The ALJ's recitation of Dr. Olszewski's September 2011 assessment paints a

somewhat incomplete picture given that this assessment predated Plaintiff's

November 2011 surgery and Plaintiff later characterized his 2011 surgery as

"unsuccessful." *See* AR 1671, 1796. However, Plaintiff does not make this

argument. Moreover, there is nothing in the ALJ's decision indicating that her

finding that Plaintiff's right knee symptom testimony was inconsistent with the

evidence in the record formed the basis for the "wholesale rejection" of Plaintiff's

testimony. The ALJ credited Plaintiff's symptom testimony to the extent it was

consistent with the record, and, as explained below, juxtaposed Plaintiff's

testimony against relevant activities that contradicted his pain testimony.

The ALJ found Plaintiff's symptom testimony inconsistent with the alleged

severity of his symptoms based on Plaintiff's ability to ride a motorcycle during

the relevant time period. Plaintiff objects to the ALJ's finding on two grounds:

that "the ALJ failed to specify which testimony she was rejecting" and "no

evidence supports the conclusion that 'short [motorcycle] trips' belied [P]laintiff's

pain testimony." (Doc. 10 at 8; *see also id.* at 6 (arguing that the "record is silent

in respect to the force plaintiff exerted when riding" the motorcycle).) Plaintiff's

18

first argument fails because the ALJ specified that Plaintiff's "occasional" motorcycle riding "would not reasonably be expected in an individual consistently experiencing diffuse pain severity levels in the claimant alleged range of 6-10/10." AR 1450. Plaintiff takes issue with the ALJ's characterization of the motorcycle as "heavy" and "with some moderate to significant vibration," (*see* Doc. 10 at 6), but Plaintiff himself characterized his motorcycle as "a pretty big bike" in previous testimony, AR 65. Likewise, Plaintiff's second argument fails because the ALJ did not err in considering Plaintiff's ability to ride a motorcycle—albeit over short distances—in assessing his credibility because such activity undermined Plaintiff's claims of total disability. *See Molina*, 674 F.3d at 1112. Accordingly, the record shows that the ALJ provided adequate reasons for rejecting Plaintiff's testimony on the severity of his pain.

Finally, the ALJ discounted Plaintiff's testimony about the severity of his lower back pain based on the imaging records. *See* AR 1453. In particular, the ALJ noted a January 2014 thoracic MRI that showed only mild to moderate facet hypertrophy, minimal posterior disc bulging, and mild flattening of the spinal cord. AR 1453 (citing AR 1225). The ALJ also noted a January 2014 lumbar MRI that showed no significant impairments for L1 through L5, showed mild diffuse posterior bulging of the disc and mild facet degenerative change at T11 and T12, and showed mild facet degenerative change at LS-S1. AR 1453 (citing AR 1226).

19

The normal imaging is consistent with the relatively normal findings on Plaintiff's back from Dr. Vanichkachorn, which the ALJ appears to credit despite not giving much weight to Dr. Vanichkachorn's other findings. *See* AR 1455. Accordingly, because the ALJ identified medical evidence that contradicted Plaintiff's account of the severity of his back impairments, the ALJ did not err in giving reduced weight to this testimony.

### C. Gaps in the Treatment Record

As noted, the lack of medical documentation that results from a claimant's failure to obtain medical treatment cannot be used as a basis on which to impugn his credibility if that failure was due to the claimant's inability to pay. *See Orn*, 495 F.3d at 638. Plaintiff argues that "the ALJ erred by undermining various aspects of the evidentiary record based on a gap in medical treatment when there is no evidence that contradicts [his] explanation that the gap resulted from his inability to afford treatment." (Doc. 10 at 7.) However, Plaintiff does not provide any citation to the ALJ's decision that corroborates his argument. Instead, the ALJ's rejection of Plaintiff's alleged symptom testimony is based on medical records spanning over a decade. *See* AR 1452–55. It is not the role of the Court to scour the record for evidence supporting Plaintiff's argument, particularly when the ALJ's decision includes numerous citations to a long span of treatment records. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)

(declining to "sort through" the spaghetti noodles a party heaved against the wall).
Thus, while Plaintiff accurately states that an ALJ cannot reject a claimant's
credibility based on a lack of medical documentation arising from the claimant's
lack of funds, Plaintiff fails to show that is what the ALJ did here.

### IV.    Medical Testimony

According to Plaintiff, the ALJ failed to support her findings on the weight
owed to the following treating providers with substantial evidence: Dr. Greg
Vanichkachorn, Dr. Thomas Jenko, Dr. Annie Bukacek, Dr. Steven Martini, and
Rebecca Norton, OTR, CHT.  In assessing disability, an ALJ may rely on the
opinions of three types of physicians: "(1) those who treat the claimant (treating
physicians); (2) those who examine but do not treat the claimant (examining
physicians); and (3) those who neither examine nor treat the claimant (non-
examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An
ALJ may reject a medical source's opinion that is not supported by the source's
own examination findings. *Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1999).
For cases such as Plaintiff's—filed before 2017—the "treating physician rule"[2]

---

[2] The 2017 regulations eliminate the deference given to treating physicians for
claims filed after March 27, 2017.  *See* 20 C.F.R. § 404.1520c(a); *see also Woods
v. Kijakazi*, __ F.4th __, 2022 WL 1195334, *4 (9th Cir. Apr. 22, 2022).  Because
this action was filed before then, treating physicians are owed deference.

applies.  However, Plaintiff does not challenge the ALJ's findings on any treating physician.

Rather, Plaintiff challenges the ALJ's rejection of opinions from examining physicians.  "The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quotation marks and alteration omitted).  "If the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quotation marks omitted).

### A.    Dr. Greg Vanichkachorn

Dr. Vanichkachorn co-signed a report with Nurse Practitioner Rebecca Sturdevant documenting a clinical review of Plaintiff in January 2010.  AR 318–21.  The report chronicles Plaintiff's subjective characterization of his shoulder and back pain, AR 318–19, and includes an assessment of Plaintiff's musculoskeletal examination, AR 319–20.  This examination indicated that Plaintiff's "gait is grossly within normal limits" and that the providers found no atrophy in his upper or lower extremities.  AR 319–320.  Plaintiff had a somewhat limited range of motion in both shoulders, and he was able to do pushups against a wall with difficulty using both arms.  AR 320.  Plaintiff's "respiratory rate would increase with minimal exercise; however, he tolerated a brisk walk down the hallway, down

22

the stairs, and back up the stairs," maintaining a normal pulse oxygen rate and a slightly increased heart rate. AR 320. The report concludes that Plaintiff "has weakness in his upper extremities and limited ability to reach or lift overhead." AR 320. Plaintiff "would have difficulty doing prolonged activities that would require him to be aerobic as he can't tolerate vigorous activity without getting short of breath." AR 320. Accordingly, the report concludes Plaintiff's prognosis was "[f]air for sedentary work." AR 321. The ALJ gave "some weight" to Dr. Vanichkachorn's assessments regarding Plaintiff's shoulder limitations but rejected the conclusion that Plaintiff was best suited for sedentary work on the basis that the prognosis was in "considerable contrast" to their examination findings. AR 1456.

Plaintiff argues that the "ALJ erred by offering no reason or analysis in support of her conclusory finding that [Dr. Vanichkachorn's] opinion contrasted with the examination findings" and by failing to identify how that opinion was "vague." (Doc. 10 at 11.) In response, the Commissioner notes that the ALJ gave less weight to Dr. Vanichkachorn's prognosis on Plaintiff's ability for sedentary work because it was inconsistent with his own findings, and the ALJ sufficiently explained why Dr. Vanichkachorn's opinion was vague such that placing less weight upon it was appropriate. (Doc. 11 at 24–25.) Although the Commissioner accurately recites several of Dr. Vanichkachorn's findings, some of those findings are inapposite to the reason the ALJ provided for giving Dr. Vanichkachorn's

opinion reduced weight.  Nonetheless, the record ultimately supports the ALJ's rejection of Dr. Vanichkachorn's prognosis that Plaintiff may do only sedentary work.

Plaintiff's argument that the ALJ did not point to specific evidence to support her finding that Dr. Vanichkachorn's opinion was internally inconsistent has merit.  While the Commissioner's arguments concerning Plaintiff's shoulder capabilities and gait would support the ALJ's conclusion that Plaintiff could do more than sedentary work, (Doc. 11 at 24), the ALJ cited neither of those reasons in support of her conclusion, *see* AR 1456.  Rather, the ALJ stated Dr. Vanichkachorn's "examination findings remain in considerable contrast to the[] opinion that the claimant might best be suited for sedentary activity, partially due to becoming short of breath with 'vigorous' activity.'"  AR 1456.  But Dr. Vanichkachorn's conclusion that Plaintiff cannot tolerate vigorous activity without shortness of breath is consistent with the rest of his examination findings: though Plaintiff was able to complete a "brisk walk," Dr. Vanichkachorn noted that Plaintiff was diagnosed with emphysema, AR 318, and "has coughing if he overexerts himself," and Dr. Vanichkachorn noted that the "brisk walking also started [Plaintiff] coughing," and "[h]is respiratory rate would increase with minimal exertion."  AR 320.  Accordingly, the ALJ erred to the extent she

discredited Dr. Vanichkachorn's prognosis on Plaintiff's ability to do sedentary

work because she found it internally inconsistent with the examination findings.

But, to the extent the ALJ gave Dr. Vanichkachorn's opinion reduced weight

because it was "vague," that decision is supported by substantial evidence, and so

the error described above is harmless. In *Ford*, the Ninth Circuit determined that

substantial evidence supported the ALJ's determination that an examining

physician did not provide "useful" statements regarding the degree of the

claimant's limitation because the physician's descriptions "failed to specify [the

claimant's] functional limits" as they spoke only in general terms such as "limited"

or "fair." 950 F.3d at 1156. *Ford* emphasized that the ALJ had no duty to further

develop the record to extrapolate the meaning of "limited" and "fair" function

because other evidence in the record was available to inform the ALJ's decision.

*Id.* Likewise, here, the ALJ rejected Dr. Vanichkachorn's opinion on Plaintiff's

capacity for work based on "vague[ness] with regard to specific limitations in

lifting, carrying, handling, fingering, walking, standing, sitting, etc." AR 1456.

Indeed, Dr. Vanichkachorn's conclusion characterizes Plaintiff's ability to reach or

lift overhead as "limited," and it is silent on any other abilities. *Compare with*

*Ford*, 950 F.3d at 1156. And, like *Ford*, the ALJ rejected the prognosis of "fair"

ability to do sedentary work for its lack of specificity. AR 1456. Given the

expanse of medical records in this case, the ALJ was under no obligation to contact

Dr. Vanichkachorn to further develop his generalized findings. *See Ford*, 950 F.3d at 1156. Accordingly, given that substantial evidence supports the ALJ's rejection of Dr. Vanichkachorn's conclusion regarding Plaintiff's work ability, the ALJ did not err in giving Dr. Vanichkachorn's opinions reduced weight.

### B.  Dr. Thomas Jenko

Dr. Jenko performed a disability review and physical examination on Plaintiff in April 2011. AR 370–73. Dr. Jenko's report recounted Plaintiff's medical history and noted Plaintiff's "education consists of a GED. He went till one year at technical school as a welder and has been employed as a welder for 20 years. He has no other job skills." AR 371. Based on his examination, Dr. Jenko concluded, "The sum total of this Patient is that he is marginally employable given his limited educational and job skills. However, his age is a factor in terms of permanent disability and it is unknown if he is re-trainable." AR 373. In reviewing Dr. Jenko's report, the ALJ gave minimal weight "only to Dr. Jenko's vocational opinion, while considerable weight has been given to his examination findings in assessing the claimant's residual functional capacity." AR 1456. The ALJ rejected Dr. Jenko's "marginally employable finding" on the grounds that such finding was "based upon the claimant's subjective reporting and vocational speculation." AR 1456.

Plaintiff argues that the ALJ erred because she "should have requested that

[Dr. Jenko] complete a function-by-function analysis. In failing to do so the ALJ

failed to fully and fairly develop the record." (Doc. 10 at 11.)[3] But, consistent

with the Commissioner's argument, (Doc. 11 at 26), "an ALJ's duty to develop the

record further is triggered only when there is ambiguous evidence or when the

record is inadequate to allow for proper evaluation of the evidence," *Ford*, 950

F.3d at 1156 (quotation marks and alteration omitted); *see also Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (explaining that the regulation

governing recontacting "applies only to a 'treating' source, whether that is a

physician, psychologist, or other medical source"). Here, Dr. Jenko performed a

disability determination examination that considered Plaintiff's alleged shoulder

pain, spinal injury, ability to ambulate, and respiratory capacity. AR 372. Even

though Dr. Jenko's findings did not include a function-by-function analysis, his

findings on these parts of the examination are not ambiguous, and there are

multiple other sources in the record from which the ALJ could evaluate Plaintiff's

alleged impairments. *See, e.g.*, AR 2681–82 (shoulder examination), 1225–28

(reports related to back pain), 398 (respiratory function evaluation). Thus, contrary

to Plaintiff's argument, the ALJ's duty to further develop the record by requesting

---

[3] Plaintiff does not seem to take issue with the ALJ's rejection of Dr. Jenko's
vocational assessment. (*See* Doc. 10 at 11 (recognizing that the "ALJ rejected this
opinion finding that it involves 'inappropriate use of vocational factors'").)

a function-by-function evaluation from Dr. Jenko was not triggered because of the completeness of the medical record in this case.

### C.    Dr. Annie Bukacek

Dr. Bukacek examined Plaintiff in May 2012, AR 707–715, and again in October 2017, AR 2750–57.  Dr. Bukacek's 2012 notes include a review of symptoms, which incorporates Plaintiff's self-report of pain in his shoulders, lower back and hips, and knee; his perceived work limitations; his depression; and his sleep difficulties.  AR 707–08.  Dr. Bukacek's remarks note "debilitating bilateral shoulder pain with significant decreased [range of motion] and atrophy of bilateral forearms" and "debilitating low back and hip pain . . . the patient's low back pain was fairly well controlled when he was going to a chiropractor on a regular basis, but he can no longer afford that."  AR 708–09.  In 2012, Dr. Bukacek also reviewed Plaintiff's other medical records.  AR 710–11.  She then diagnosed Plaintiff with "chronic low back, shoulder, and knee pain" and indicated the following limitations "on a sustained, five day-a-week basis": walking unassisted on a flat service for 1-2 hours before resting for 20 minutes; standing unassisted on a hard, flat surface for 30–60 minutes without resting; and standing and walking on a flat surface for a total of 2–4 hours per day.  AR 712.  Dr. Bukacek ultimately wrote a letter in 2012 that states Plaintiff "is unable to work full time and consistently due to debilitating shoulder pain but he also has knee and back pain,

28

emphysema, insomnia and depression reactive to pain, and hand weakness,

numbness, and lack of coordination." AR 714.

In 2017, Dr. Bukacek again examined Plaintiff and documented his

subjective accounts of his pain. AR 2750.  She also chronicled Plaintiff's medical

history, which included an account of Plaintiff's examination by Rebecca Norton,

OTR, in 2015, and a review of an MRI done on Plaintiff's thoracic spine in 2014.

AR 2753–55.  She concluded that Plaintiff retained

> the ability to lift up to 20 pounds, [but] he cannot carry or lift this much
> for one third of the work day, he could only perform such lifting on a
> seldom basis.  He can lift 10 pounds, but not frequently, he could
> occasionally . . . Even if [Plaintiff] can sit and stand as need[ed] during
> a day, not lift anything over 10 pounds occasionally, and up to 20
> pounds on a seldom basis, and has breaks, he may be able to get through
> a day, but not the next day.

AR 2755.  She stated that Plaintiff's conditions "prevent him from performing or

sustaining work in even the light or sedentary range."  AR 2755.

The ALJ rejected Dr. Bukacek's findings on Plaintiff's "severe back

degeneration" on the basis that her conclusion contrasted with the medical

evidence, including diagnostic imaging, that "supports essentially no limitations

related to the claimant's back and few limitations related to the claimant's knees."

AR 1458.  The ALJ also noted that Dr. Bukacek's 2017 findings were based, in

part, on a review of records after Plaintiff's date last insured.  AR 1458–59.  The

ALJ gave Dr. Bukacek's findings limited weight in part because "it appears she

29

based her opinions primarily on the claimant's subjective complaints, as she performed a limited examination and no objective tests to measure his functional abilities." AR 1459.  She further noted that it "appears the claimant attended the examination at the request of his attorney in order to generate evidence to support his claim for disability, and not for the purpose of treatment," and that Dr. Bukacek did not refer Plaintiff to a specialist after seeing him in 2012 and 2017.  AR 1459.

Plaintiff argues that the ALJ erred in many ways in giving limited weight to Dr. Bukacek's findings: the ALJ failed to sufficiently explain why she rejected Dr. Bukacek's "severe back degeneration" finding; the ALJ assumed Dr. Bukacek's findings were based on Plaintiff's subjective reports; the ALJ rejected Dr. Bukacek's 2017 findings based on timing of the records she reviewed; and the ALJ erred in using Dr. Bukacek's lack of referral and Plaintiff's counsel's recommendation to see Dr. Bukacek as a basis for discounting her opinions.  (Doc. 10 at 12–16.)  The Commissioner responds that the ALJ's decision to give little weight to Dr. Bukacek's opinions is supported by substantial evidence.  (Doc. 11 at 26–28.)  Ultimately, while some aspects of the ALJ's reasoning are problematic, the record supports the ALJ's determination.

First, Plaintiff is correct that the ALJ erred in relying on the fact that Dr. Bukacek saw Plaintiff only as part of his effort to acquire disability benefits, and the fact that she did not refer him to a specialist, as a reason for giving Dr.

30

Bukacek's opinion reduced weight.  The Commissioner appears to concede this

point as the Commissioner does not engage with this aspect of Plaintiff's argument

but instead cites *Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008),

for the proposition that an ALJ's determination need not be correct on every basis

to be upheld on review.  (Doc. 11 at 28.)  But the Commissioner is correct that,

given the other substantial evidence in the record and the legitimate reasons the

ALJ provided for giving Dr. Bukacek's decision limited weight, the ALJ's

erroneous reasoning based on the purpose of the visit and failure to refer is

ultimately harmless.  *See Carmickle*, 533 F.3d at 1162.

Despite Plaintiff's argument otherwise, the ALJ explained why she rejected

Dr. Bukacek's "severe back degeneration" finding.  While the ALJ found

Plaintiff's degenerative disc disease "severe" at step two, AR 1440, her rejection of

Dr. Bukacek's finding of "severe back degeneration" is not inconsistent with that

finding.  As the ALJ explained at step three, Plaintiff's degenerative disc disease

did not meet or medically equal the severity of a listed impairment based on

evaluation of Plaintiff's medical records, including MRI findings, and Plaintiff's

activities of daily living.  AR 1444–45.  In reaching this conclusion, the ALJ

specifically addressed Plaintiff's facet hypertrophy and the spinal cord flattening.

*Compare* AR 1445 *with* (Doc. 10 at 12 ("The ALJ erred by failing to explain why

the facet hypertrophy and the bi-level central spinal cord flattening did not

31

constitute 'severe back degeneration.'")).  Additionally, and related to Plaintiff's next argument against the ALJ's consideration of Dr. Bukacek's reports, Dr. Bukacek relied in large part on Plaintiff's subjective reports of his symptoms to determine that his back degeneration was "severe."  *See* AR 707 (2012 subjective account of lower back pain as recounted to Dr. Bukacek), AR 2750 (2017 subjective account of back pain, including 2016 hospitalization).  As explained above, the ALJ's determination that Plaintiff was not entirely credible as to the severity of his pain is based on substantial evidence in the record; moreover, imaging results from the relevant time frame indicate unremarkable impairments as they relate to Plaintiff's spine.  *See* AR 1218, AR 1220 (indicating back pain is due to "sciatic problems"), AR 1400–01.

Finally, Plaintiff argues that the ALJ improperly discounted Dr. Bukacek's opinion based on the finding that Dr. Bukacek "reviewed records 'both before and after the claimant's date last insured'" and that Dr. Bukacek's 2017 report "appears to incorporate injury not applicable during the relevant time period."  (Doc. 10 at 19 (quoting AR 1460).)  But it was proper for the ALJ to disregard any reliance on medical evidence that post-dated Plaintiff's December 2014 date when he was last insured.  *See Thuy Le Ngueyn v. Colvin*, 639 F. App'x 510, 510 (9th Cir. 2016) ("To be entitled to Title II disability benefits, a claimant must establish that her disability existed on or before the date on which her disability insurance expired.")

32

(citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).  Plaintiff cites no

authority to indicate that his "chronic" conditions vitiated the typical bounds of

relevance, and so it was proper for the ALJ to disregard the "injury not applicable

during the relevant time period."  Consequently, because substantial evidence in

the record supports the ALJ's determination of the weight to give Dr. Bukacek's

opinions, the ALJ's limited errors were ultimately harmless.

### D.    Rebecca Norton, OTH, CHS

Rebecca Norton, OTR, CHS, completed an occupational therapy initial

evaluation on Plaintiff in May 2015.  *See* AR 1415–17.  In this Court's 2017

remand order, it specifically instructed the ALJ to "consider, evaluate, and assign

appropriate weight to Ms. Norton's 'other medical source' opinion."  *Plaintiff v.*

*Berryhill*, 9:16-cv-90-M-DLC-JCL (Doc. 18 at 1).  Norton's assessment concluded

that Plaintiff had significant nerve compression that affected his grip and resulted

in muscle atrophy and pain.  AR 1417.  She noted Plaintiff "is not competitively

employable as he presents, and given his years of not having health care available

to him, his symptoms are undoubtably worse because of this lack of intervention in

a timely manner."  AR 1417.  She indicated that Plaintiff would be limited "to only

occasional use (1/3 of a work day or less) for reaching, grasping, handling and

fingering, pushing, or pulling" and noted his "nerve issues can be aggravated

[with] repetitive activities [and] endurance is poor [with] poor strength."  AR 1419.

She also indicated limitations that prevent Plaintiff from using his hands for a full eight-hour day," explaining he "would need frequent breaks—not at a competitive level of work . . . extreme weakness [and] longstanding nerve damage." AR 1419.

The ALJ determined that Norton was "not a medical provider or examiner" but summarized Norton's findings and noted her physical examination and testing of Plaintiff. AR 1461. In particular, the ALJ emphasized that Norton "believed that, without medical access, the claimant is likely to continue to lose hand function for even basic activities of daily living." AR 1462. But the ALJ gave Norton's "overall opinion minimal weight, finding it inconsistent with a variety of activities acknowledged by the claimant, including playing pool, riding his motorcycle, mowing the lawn, driving a vehicle utilizing his hands on or before December 2014, etc." AR 1462.

Plaintiff argues that the ALJ erred in giving Norton's opinions reduced weight based on his activities because she failed "to assess their nature, frequency, extent, and duration[,] leaving insufficient information about the activities to support the conclusion that they conflicted with the opinion of Ms. Norton." (Doc. 10 at 16.) The Commissioner responds that the ALJ reasonably discounted Norton's assessment because her findings that he would be unable to do any type of work requiring repetitive, sustained use of his hands was contradicted by the activities the ALJ noted. (Doc. 11 at 28.) Plaintiff has the better argument here.

34

An ALJ may discount "other source" opinions so long as she "provides reasons germane to each witness for doing so." *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (quotation marks omitted); *see also* 20 C.F.R. § 404.1513(a). To be sure, an ALJ provides satisfactorily germane reasons if the ALJ rejects the testimony by one witness and points to those same reasons when rejecting testimony from a different witness. *Cf. Molina*, 674 F.3d at 1114 (explaining "germane reason" in the context of rejecting lay testimony). Here, the ALJ discussed the activities of playing pool, riding a motorcycle, and mowing the lawn in the context of assessing Plaintiff's mental functioning, AR 1442, and in the context of assessing the severity of Plaintiff's knee, shoulder, and hip pain, AR 1450. But the ALJ's discussion of Plaintiff's activities did not consider whether those activities reflected—or failed to reflect—any impairments of Plaintiff's hands, particularly as it related to Plaintiff's carpal tunnel, which the ALJ found to be a severe impairment. *See* AR 1440. Thus, in the absence of any finding about Plaintiff's activities as they relate to Plaintiff's hand functionality, the ALJ's reason for rejecting Norton's findings on Plaintiff's carpal tunnel is not germane.

Furthermore, though Norton's examination took place after Plaintiff's date last insured, her assessment includes an explanation of the progression of Plaintiff's hand-related impairments, which indicates it includes an assessment of Plaintiff's capabilities during the relevant time period for assessing disability

35

benefits.  *See* AR 1417.  Additionally, the ALJ identified no other evidence in the record that contradicted Norton's findings.  Moreover, the ALJ appeared to concede that Plaintiff did have some hand-related limitations when she recognized that Plaintiff's home-based small engine repair business is not viable, in part, due to the comparatively slower pace of Plaintiff's work.  AR 1462.  This slower pace is consistent with Norton's findings of reduced movement in Plaintiff's hands.  Therefore, because the ALJ did not provide germane reasons for rejecting Norton's findings, no other evidence in the record contradicts Norton's findings, and the ALJ cited Plaintiff's activities that support Norton's perceived limitations, the ALJ failed to comply with the remand order to "consider, evaluate, and assign appropriate weight to Ms. Norton's 'other medical source' opinion."

Finally, the ALJ's error concerning the evaluation of Norton's findings is not "inconsequential to the ultimate nondisability determination."  *See Brown-Hunter*, 806 F.3d at 492 (quotation marks omitted).  The ALJ's RFC finding states that "[Plaintiff] was frequently able to perform fine and gross manipulation bilaterally."  AR 1448. The ALJ accepted the vocational expert's testimony, AR 1516–17, and determined that Plaintiff could be employed in the following occupations: Cashier II, Sales Attendant, and Cafeteria Attendant, AR 1467. However, at the 2021 hearing, the vocational expert testified that if Plaintiff were limited "to using the dominant right hand upper extremity to only occasional . . .

for pushing, pulling, reaching, and grasping and not at all for keyboarding, and the upper left extremity [were] also so limited," Plaintiff would be unable to perform any of those three jobs. AR 1519.  Because Norton's findings arguably support the hand-related impairments that would disqualify Plaintiff from working in these types of employment, the ALJ's decision to discount Norton's findings directly bore on the ALJ's ultimate non-disability finding.  Therefore, on remand, the ALJ is instructed to reevaluate Norton's findings on Plaintiff's hand functionality and incorporate any reevaluation into the hypotheticals posed to the vocational expert.

### E.  Dr. Steven Martini

Dr. Martini examined Plaintiff in September and November 2020.  AR 3330–34.  In response to a request from Plaintiff's counsel, Dr. Martini completed a medical statement of ability to do work-related activity.  AR 3323–28.  The assessment indicates that Plaintiff can sit uninterrupted for one hour and could sit intermittently for a total of six hours in an eight-hour workday.  AR 3324.  Dr. Martini opined that Plaintiff could never reach overhead, and could do minimal other reaching, handling, fingering, feeling, and pushing and pulling.  AR 3325. To explain how he reached this conclusion, Dr. Martini cited the "assessment of Rebecca Norton . . . objectively disqualifies the use of the upper extremities for sustained or repetitive or discriminative tasks."  AR 3325.  Dr. Martini further found that Plaintiff's foot diagnosis "preclude[s] the use of the distal/lower

extremities for sustained work of any kind. . . (See Dr. McGillis orthopedic

record)." AR 3325.  He also filled out a questionnaire from Plaintiff's counsel.

AR 3320–21.  There, he opined that Plaintiff met or equaled two Social Security

Listings: "Section 1.02 'Major dysfunction of joints (due to any cause).  Four

orthopedic surgeries to 'major' joints (knees/shoulders) occurred well in advance

of 12/2014.  Also, 11.14 Peripheral neuropathy, median and ulnar nerves

bilaterally."  AR 3320.  Dr. Martini further stated, "[Plaintiff] clearly meets 1.02

by objective criteria.  The patient's transferable skills for 'light' work are

documented to be poor, making him unsuitable for a successful 'retraining' effort."

AR 3321.

The ALJ gave no weight to Dr. Martini's opinion that Plaintiff met or

equaled the Social Security Listings.  AR 1465.  The ALJ noted the requirements

of Listing 11.14—which include that upper extremity limitations result in "extreme

limitations" in the ability to stand up from a seated position and in the ability to

walk or use the upper extremities—and found no support in the record for Dr.

Martini's conclusion.  AR 1465.  The ALJ gave nominal weight to Dr. Martini's

apparent assessment of Plaintiff's inability to perform past relevant work as that

conclusion was outside Dr. Martini's area of expertise but nonetheless consistent

with the assessment of the vocational expert.  AR 1466.  The ALJ appeared to

credit Dr. Martini's conclusion that Plaintiff was able to lift and carry at the light

38

exertional level as that opinion was consistent with the RFC. AR 1466. However, the ALJ afforded minimal weight to Dr. Martini's assessment of Plaintiff's limitations regarding standing, walking, and sitting because the ALJ determined that Dr. Martini reached his determination based on the records from Dr. Magill, and those records are outside the relevant time period. AR 1466.

Plaintiff argues that the ALJ erred in rejecting Dr. Martini's conclusions regarding Plaintiff's sitting and standing limitations and erred in finding that Dr. Martini's opinion improperly relied on the medical records from Dr. Magill. (Doc. 10 at 16–17.) Additionally, Plaintiff argues that the ALJ erred in not giving greater weight to Dr. Martini's conclusion that Plaintiff would need to recline two to three times daily. *(Id.* at 16.) In response, the Commissioner argues that the ALJ properly discounted Dr. Martini's conclusions regarding sitting and standing limitations because those conclusions are unsupported by the relevant treatment records and, relatedly, the records from Dr. Magill are irrelevant. Concerning recumbency, the Commissioner argues that Dr. Martini's opinions were properly discounted because they reflected current limitations, not limitations within the relevant period. The Commissioner has the better argument.

The assessment Dr. Martini completed included this prompt: "Identify the particular medical or clinical findings . . . which support your assessment or any limitations and why the findings support the assessment." AR 3325. In response,

the only "particular" findings Dr. Martini identified were those of Dr. Magill. *See*

AR 3325. Accordingly, it was not error for the ALJ to conclude that Dr. Martini

reached his conclusions regarding Plaintiff's ability to stand, walk, and sit based on

Dr. Magill's records, *see* AR 1466, which Plaintiff emphasized post-dated the

relevant period for disability consideration in his initial letter to Dr. Martini, *see*

AR 3317. As for Plaintiff's need to recline, Dr. Martini wrote Plaintiff "will

require reclined position 30–45 [minutes] 2–3x per waking hours." AR 3324.

While the Commissioner fairly notes that the phrasing of Dr. Martini's assessment

reflects current limitations, even if Dr. Martini's recumbency assessment were

credited, it does not necessarily indicate any work impairment; rather, it indicates

Plaintiff will need to recline two to three times during "waking hours." AR 3324.

Thus, the ALJ did not err in giving reduced weight to these aspects of Dr. Martini's

opinion.

## V.    Lay Testimony

This Court's 2017 remand order directed the ALJ to reevaluate the

statements from Plaintiff's wife. *Plaintiff v. Berryhill*, 9:16-cv-90-M-DLC-JCL

(Doc. 18 at 2). Plaintiff's wife submitted two letters, received May 2012 and May

2015, both of which the ALJ found to have been drafted during the relevant time

frame. AR 1463. In the letter received May 2012, Plaintiff's wife detailed how

Plaintiff could no longer do activities of daily living, including showering

40

independently, dressing independently, going for walks of any distance greater

than a half mile, going dancing, and helping with certain household chores.  AR

317.  In the letter received May 2015, Plaintiff's wife stated that Plaintiff's

"shoulders have gotten worse and [she] ha[d] to help more in the shower."  AR

1206.  She stated Plaintiff experienced "constant pain" in his knees and back so

that he was unable to sit or stand for very long.  AR 1206.  She also explained that

Plaintiff had been trying to find a job, but was unsuccessful because "no one wants

to hire him" due to his "bad knees, his back, hips, shoulders and more."  AR 1207.

The ALJ gave Plaintiff's wife's statements "minimal weight" in light of the

"comprehensive review of medical evidence" included in the ALJ's decision.  AR

1463.  The ALJ stated that Plaintiff's wife's statements were "in significant

contrast to objective medical evidence regarding the claimant's hips, knees, back,

hands, etc." AR 1463.  Plaintiff argues that the ALJ erred because she did not

specify which observations contrasted with the evidence, and so the ALJ failed to

provide a germane reason for rejecting Plaintiff's wife's testimony.  (Doc. 10 at

17.)  The Commissioner argues that the ALJ did not err because lay witness

testimony may be rejected if it is inconsistent with the medical evidence, and the

ALJ need not directly link her determination to specific medical evidence so long

as the medical evidence has been previously reviewed elsewhere in the ALJ's

opinion. (*See* Doc. 11 at 23 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), and *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).)

An ALJ need not specify any particular, contradictory part of the record so long as the decision includes discussion of medical records and relevant activities that undermine the lay testimony. *See Lewis*, 236 F.3d at 512. For example, *Lewis* noted that the "ALJ did not cite the record" in undermining the testimony of the claimant's family members, but the court inferred the medical records to which the ALJ was referring and concluded this "allusion" amounted to a sufficiently germane reason. *See id.* at 511–12. Moreover, *Lewis* also concluded that the ALJ's decision to give reduced weight to the lay witness testimony was supported by a sufficiently germane reason because the ALJ noted activities that undermined the lay testimony about Plaintiff's activities elsewhere in the decision, "even if [the ALJ] did not clearly link his determination to those reasons." *Id.* at 512. Thus, while Plaintiff is correct that the ALJ's explanation for rejecting Plaintiff's wife's testimony is not the paragon of specificity, under *Bayliss* and *Lewis,* it need not be. As discussed above, the medical record undercuts both Plaintiff and his wife's testimony about the severity of his impairments in his hips, back, and shoulders.

Nevertheless, the rejection of Plaintiff's wife's testimony relating to Plaintiff's hands is not supported by the record. As discussed above, the ALJ failed to give proper weight to Dr. Norton's findings regarding Plaintiff's

42

metacarpal and carpal impairments.  Accordingly, to the extent the ALJ rejected

Plaintiff's wife's testimony based on her conclusion that testimony was

contradicted by the medical evidence related to Plaintiff's hands, that conclusion

was in error.  The ALJ is directed to reconsider this aspect of Plaintiff's wife's

testimony on remand.

### Conclusion

Based on the foregoing, IT IS ORDERED that Plaintiff's request for remand

is GRANTED.  The Commissioner's decision is REVERSED, and this matter is

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion.

DATED this _10_ day of May, 2022.

Donald W. Molloy, District Judge
United States District Court